# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| V. | ) CR 2-93 |
| | ) CV 10-127 |
| GARY LEE | ) |

## OPINION AND ORDER

### SYNOPSIS

By Order dated August 11, 2010, in connection with Defendant's Motion pursuant to 28 U.S.C. 2255, I ordered an evidentiary hearing regarding whether counsel's alleged statements to Defendant regarding potential penalties under a proposed plea agreement, which Defendant rejected, constituted ineffective assistance of counsel. In particular, Defendant asserted that counsel told him that the penalty under the plea agreement was twenty years, which was the same penalty he faced if convicted at trial. In the August 11 Opinion, I noted a contradiction in the draft plea letter, in which the Government both agreed not to file an information pursuant to Section 851, and also reserved the right to file such an information. At the hearing, Defendant proffered his own testimony, as well as the testimony of Charles Porter, his counsel at the pertinent time, and Francisco Aguilar, a fellow inmate. The parties have submitted post-hearing briefs.

For the following reasons, upon careful consideration of the hearing transcript and the parties' submissions, Defendant's Motion will be denied.

### OPINION

I will consider the issue according to the standards applicable to Section 2255 and to Sixth Amendment ineffective assistance of counsel, as more fully set forth in my August 11, 2010 Opinion. In brief, relief is available under Section 2255 only under exceptional

circumstances, in the case of "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 7 L.Ed. 2d 417 (1962). To demonstrate that counsel was constitutionally ineffective, a defendant must show that counsel's performance fell below "the wide range of professionally competent assistance," and that the deficient conduct prejudiced defendant. Strickland v. Washington, 466 U.S. 668; 104 S. Ct. 2052; 80 L. Ed. 2d 674 (1984).

## I. DEFENDANT'S MOTION

Defendant asserts that his understanding, based on what counsel told him, was that the plea agreement was for a minimum of twenty years' imprisonment. Defendant proffered the testimony of a fellow inmate, who read the draft plea letter, and advised Defendant that the plea could have subjected him to a five year sentence, rather than the twenty-year sentence he received. Upon receipt of that information, Mr. Aguilar testified, Defendant was surprised. In addition to testimony regarding his own understanding of the plea offer, Defendant seeks to discredit his counsel's testimony that counsel correctly communicated to him the terms of the plea offer. He does so by pointing to various inconsistencies in the plea letter, and states that "to the extent that" Mr. Porter told Defendant that the plea agreement contained inconsistencies that could result in a twenty year sentence, Defendant could have reasonably believed that the plea offered no benefit. Defendant also points to certain conduct by defense counsel, such as his dealings with a meeting arranged between cooperators and defendants to the multi-defendant conspiracy, as inconsistent with his recollection that he advised Defendant to accept the plea offer.

At the hearing, Mr. Porter testified that "the understanding of the parties was that there was not going to be the 851 filed if Mr. Lee accepted the plea that was offered." He further states that the draft, and its inconsistencies, "was not the understanding of the parties":

> I told him that the offer was three and a half to less than five kilos, which would be--obviously, there was a conflict with the three and a half to five. And I told him that no 851 enhancement would be filed. So that was my understanding from my discussions with [Government counsel] and that is what I communicated to Mr. Lee. Obviously, the discrepancies in this letter are discrepancies. This was a draft. This was not the final letter. But what I told Mr. Lee what the offer was it was three and a half to less than five kilos; that there would be no 851 enhancement; that Count Two would be dismissed; that he would get three points for accepting responsibility. And I went over with him in detail what the guidelines would be if he accepted it; I went over with him different criminal histories; and I went over what would happen if he didn't accept the plea and what the mandatory minimum would be if it was doubled. So my notes are very comprehensive as to what I discussed with him.

Mr. Porter further observed that his notes from the meeting with Defendant reflected what he understood the plea to be, and what he told Defendant about the plea. Although he acknowledged inconsistencies in the draft letter, he stated that those would "obviously" have to be resolved if his client accepted the plea. Mr. Porter said that he advised Defendant "multiple times" to accept the plea. Mr. Porter testified that he advised Defendant that he thought trial was too big of a risk. He never requested that Government counsel clarify the draft letter, because Defendant wasn't interested in the plea "even under my version in my notes."

I credit Mr. Porter's testimony. His testimony was supported by notes from the time of his meeting with his client, and by the affidavit of counsel for the Government, which Defendant submitted as a hearing exhibit. Mr. Porter was forceful in his insistence that he had communicated his understanding of the plea offer, rather than the terms of the erroneous plea letter, to Defendant. Mr. Porter further explained why he would not have recommended a plea bargain that would result in a twenty year sentence. At the hearing, Mr. Porter demonstrated a

competent understanding of sentencing law and processes, concomitant with the fact that he has practiced law in the area of criminal defense since 1987. Defendant may have felt and expressed surprise at the terms of the draft plea letter, as reported by Mr. Aguilar. I do not, however, find that Mr. Porter was ineffective in communicating the plea terms to Defendant. There is no evidence that Mr. Porter was misled by the errors in the draft plea letter, and no evidence that Defendant read or was himself misled by those errors.

Further, while Mr. Porter stated that he noted inconsistencies in the plea letter, there is no evidence that he told Defendant that those inconsistencies could result in a twenty-year sentence. Additionally, I do not find Mr. Porter's actions with respect to the cooperator/defendant meeting inconsistent with his advice to his client; there are a number of reasons why he might not have attended, or urged his client to attend, that meeting, and my speculation in that regard would not assist the present inquiry. In sum, there is no evidentiary basis for overcoming the strong presumption that defense counsel acted reasonably with respect to the plea negotiations, under the deferential standard of <u>Strickland</u>. Therefore, Defendant has not demonstrated extraordinary circumstances entitling him to relief under Section 2255, and his Motion will be denied.

## II. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. 2253(c)(2), a "certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right." In this case, for the reasons stated supra, Defendant has not made such a showing. Therefore, no certificate of appealability shall issue.

# ORDER

AND NOW, this 7th day of June, 2011, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion (Docket No. 872), as regards the sole issue remaining therein, is DENIED. No certificate of appealability shall issue.

BY THE COURT

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court